# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE, *individually, and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>TRACKI, INC.; TRACKIMO, INC.; and TRACKIMO LLC;<br><br>Defendants. | *Case No.* _____<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff Jane Doe ("Plaintiff"), individually, and on behalf of all others similarly situated, by and through her undersigned counsel, brings this Class Action Complaint against Defendants Tracki, Inc., Trackimo, Inc., and Trackimo LLC (collectively, "Defendants") for negligence, strict products liability, unjust enrichment, and aiding and abetting of tortious conduct. Plaintiff alleges the following based upon personal knowledge as to herself, and, as to all other matters, upon information and belief, including investigation by counsel and facts of public record. Plaintiff states as follows:

## **INTRODUCTION**

1.      Tracki claims to sell GPS tracking devices, in reality, Tracki peddles customizable stalking kits—giving abusers a menu of tools to monitor, follow, and exert control over their victims with disturbing precision.

2.     Tracki's GPS tracking devices can be attached to any object or person while transmitting their location in real time to the owner of the device via a smartphone app or a web platform.

3.     Tracki has failed to implement reasonable and necessary safeguards to prevent the foreseeable misuse of its tracking devices for unlawful surveillance or stalking. Specifically, Tracki does not require consent, authentication, or verification from the individual or object being tracked. Nor does it provide any form of notice, alert, or audible signal to notify a person that a Tracki device is present or actively tracking them. This lack of protective features renders the product unreasonably dangerous and defective and constitutes a failure to exercise reasonable care in the design, manufacture, and distribution of the device.

4.     Despite their compatible[1] design with a variety of operating systems, including both Android and iOS, Tracki tracking devices do not trigger "unknown tracker alerts" on either platform. These alerts are typically intended to detect Bluetooth-based trackers—such as Apple AirTags, Tile, or Samsung SmartTags—that rely on proximity networks like Apple's Find My Network.[2]  In contrast, Tracki devices primarily use GPS, cellular, and WiFi technologies for location tracking, not Bluetooth. As a result, they are not discoverable through Apple's Find My app or Android's Unknown Tracker Alerts feature.[3]

5.     As a result of Tracki's negligence and reckless disregard for the privacy and safety of consumers, Tracki's devices have been used by stalkers to track, harass, intimidate, and harm their victims. Numerous reports and stories have emerged of people finding Tracki devices hidden

---

[1] Tracki, All Products, available at: https://tracki.com/collections/all
[2] https://omni.tracki.com/hc/help/articles/1742943852-will-a-tracki-device-trigger-an-unknown-tracker-alert
[3] *Id*.

in their belongings, cars, or clothes, and discovering that they have been followed or monitored by their ex-partners, estranged spouses, abusive relatives, or unknown assailants.[4] These victims have suffered severe emotional distress, fear, anxiety, and physical harm as a result of being stalked by Tracki devices.

6.      Plaintiff Jane Doe is one such victim. Plaintiff Doe broke up with her ex-boyfriend in July 2024. In the days and weeks following their breakup, Plaintiff Doe's ex-boyfriend engaged in a sustained campaign of harassment. His conduct included repeatedly calling Plaintiff from unknown numbers, unlawfully entering into her home while she slept, positioning himself along her regular travel routes, and appearing uninvited at various locations where she would not reasonably expect to encounter him. Unbeknownst to Plaintiff at the time, her ex-boyfriend had purchased a Tracki tracking device and covertly attached it to the underside of her vehicle, using it to surreptitiously monitor and track her movements without her knowledge or consent. On August 11, 2024, Plaintiff Doe found a Tracki device attached to the underside of her Jeep near the rear passenger side bumper, after noticing that her ex-boyfriend had been showing up at places where she was without any explanation.

---

[4] State Police arrest man for placing a tracker device on car | wgrz.com (available at https://www.wgrz.com/article/news/crime/westfield-man-arrested-putting-tracking-device-on-car/71-b7c8777e-d242-4de1-91ba-01a072b0023a); *see, also* Man arrested for placing a tracking device on victim's vehicle | New York State Police (available at https://troopers.ny.gov/news/man-arrested-placing-tracking-device-victims-vehicle)



Fig. 1



Fig. 2

7.      Plaintiff Doe's experience is far from isolated. Each year, a staggering 13.5 million

people in the United States fall victim to stalking.[5] With nearly one in three women and one in six

---

[5] Stalking Prevention Awareness and Resource Center (SPARC), Stalking Fact Sheet (available at: https://www.stalkingawareness.org/wpcontent/uploads/2019/01/SPARC_StalkngFactSheet_2018_FINAL.pdf).

men experiencing this terrifying violation in their lifetime, stalking is not just a statistic – it's a widespread crisis that demands urgent attention.[6]

8.       Nearly forty percent (40%) of victims are stalked by someone they once loved or trusted – a current or former intimate partner, while an additional 42 percent (42%) are targeted by acquaintances, offsetting a prevailing misconception that stalking occurs solely by strangers.[7]

9.       In today's digital world, technology has become a dangerous weapon in the hands of stalkers. They exploit it to monitor, track, and invade the lives of their victims, often with alarming ease. A 2022 Department of Justice bulletin revealed a chilling reality – that 14% of stalking victims were tracked using electronic devices or other tech applications.[8]  One of the most invasive methods is through the use of real-time location information, including GPS tracking software, which allows stalkers to follow their victims' movements unnoticed in real time.

10.      No matter the tactics employed, the result is the same – crippling fear that shatters a victim's sense of safety, security, autonomy, and control. Stalking doesn't just disrupt lives, it steals them. The consequences can be devasting, with one in eight employed stalking victims forced to miss work, with more than half losing over five days of wages.[9] One in seven victims will uproot their entire life and move.[10] The toll on their mental health is just as severe with many stalking victims suffering higher rates of depression, anxiety, insomnia, and social dysfunction than the general population.[11]

---

[6] *Id.*

[7] *Id.*

[8] Morgan, R. & Truman, J. (2022). Stalking Victimization, 2019*,* Washington, DC: Bureau of Justice Statistics, available at: https://bjs.ojp.gov/content/pub/pdf/sv19.pdf.

[9] Baum, K., Catalano, S., & Rand, M. (2009). Stalking Victimization in the United States. Washington, DC: Bureau of Justice Statistics

[10] *Id.*

[11] Blaauw, E., Arensman, E., Winkel, F.W., Freeve, A., & Sheridan, L. (2002). The Toll of Stalking. Journal of Interpersonal Violence 17(1): 50-63

11.    Tracki, in particular, has created a device that has wreaked devastation in many lives.  Per one security researcher's investigation into Tracki's devices:

> Tracki is provably very popular among stalkers. support receives multiple subpoenas per week from local and federal law enforcement worldwide, frequently for stalking or harassment but also occasionally for other charges, including domestic violence, attempted murder, and murder, all of which involve the victim being tracked down using a Tracki device. the company is not only aware of these uses, but has even actively assisted customers in nonconsensual tracking of individuals via their helpdesk.

> in one case (not involving assistance from Tracki personnel), a perpetrator attached a Tracki device to the car of an ex-partner in order to discover her new residence, where she lived with a new partner; the perpetrator then fatally stabbed the new partner more than 80 times. in another case, a Trackimo device was used for drug trafficking in the lead-up to a violent triple-murder, including the execution-style shooting of a 6-year-old. at least two other cases also carry a murder charge, but their investigations remain in progress. [12]

12.    Tracki must be held accountable for its continuing failure to adequately protect members of the public from being stalked by its Tracki GPS monitoring devices.

13.    Plaintiff brings this action on behalf of herself and a Class of individuals who have been and who are at risk of stalking via this dangerous product.

14.    Tracki's acts and practices, as detailed further herein, amount to acts of negligence, strict products liability, unjust enrichment, and aiding and abetting of tortious conduct. Plaintiff, in a representative capacity, seeks all available damages for herself and for the Class, as well as injunctive and declaratory relief against Defendants, correcting Defendants' practice of releasing unreasonably dangerous products into the stream of commerce, misrepresenting the harms

---

[12] *stardom dreams, stalking devices and the secret conglomerate selling both* (Aug. 15, 2024) (available at https://maia.crimew.gay/posts/gps-track-deez-nuts/)

associated therewith, and facilitating the unwanted and unconsented to location tracking of Plaintiff and Class Members.

## PARTIES

15.     Plaintiff Jane Doe is a resident of Tennessee.

16.     Defendant Tracki, Inc. ("Tracki") is an American consumer electronics company incorporated in Delaware and headquartered in New York, New York. Tracki's flagship items of consumer electronics are portable tracking devices.

17.     Defendant Trackimo, Inc. ("Trackimo"), a US company headquartered in Cedarhusrt, New York, is an IoT (Internet of Things) solution provider with proprietary technology, enabling worldwide connectivity for M2M (Machine to Machine) devices.

18.     Defendant Trackimo, LLC is a foreign business corporation organized under the laws of Delaware with a principal place of business at 450 Seventh Avenue, Suite 1408, New York, NY 10123.

19.     Collectively, Defendants Tracki, Trackimo, and Trackimo LLC are responsible for the development, marketing, sale, and support of the Tracki GPS tracking devices at issue in this Complaint.

## JURISDICTION AND VENUE

20.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) in that the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which members of the Class are citizens of a state different from Defendants.

21.     Venue is proper pursuant to 28 U.S.C. §1391 in that Defendants have their principal place of business in this District; some of the acts and transactions giving rise to this action occurred in this District; Defendants are authorized to conduct business in this District, have

intentionally availed itself of the laws and markets within this District through distribution and sale of their products and services in this District, do substantial business in this District, and are subject to personal jurisdiction in this District.

22.    On information and belief, venue is proper in this District under 28 U.S.C. § 1400(b) because Defendant is deemed to reside in this District.

## FACTUAL ALLEGATIONS

**A.  Tracki GPS Trackers: Tools of Surveillance and Abuse**

23.    A Tracki GPS tracker is a physical device that the owner attaches to objects for location purposes.



Fig. 3



Fig. 4

24.    In part, Tracki markets its products as a way to account for valuable items, pets, or vehicles, claiming that its devices provide "worldwide coverage".

25.     However, Tracki's devices also pose a serious threat to the privacy and safety of millions of people who may be unwittingly tracked by stalkers, abusers, harassers, or criminals using Tracki's products.

26.     In point of fact, Tracki explicitly advertises its tracking devices for the purpose of tracking *people*.  A May 14, 2025 blog post on Tracki's website, titled "Track People with Apple AirTag - Pros and Cons: Best Alternative,"[13] lays out a case for why Tracki's tracking devices are the *best product* (notwithstanding Apple's market dominance for small geolocation tracking devices) for the *explicit purpose of tracking human beings*, stating that "Tracki GPS Tracker is a small, lightweight device that ___*helps you locate and monitor your*___ important items, ___*loved ones*___, or vehicles ___*in real-time*___. It works worldwide, making it a reliable choice for keeping an eye on what matters most to you."[14]

27.     Even more horrifying, a May 14, 2024 blog post titled "How to Hide a GPS Tracker on a Car" starts with the following lede:

> Whether it's to make sure of your teen driver's safety, to **ensure that your spouse is not cheating**, or to simply know where your vehicle is in case it is stolen, it's essential that you place your tracking device in an inconspicuous area. **Once the person finds out that they're being tracked, your device will be broken, and a family conflict may arise because they will think you don't trust them. To avoid this scenario, you have to know where to hide the GPS tracker on a car.**[15]

28.     Beyond the above statement, the post is riddled with statements that make it clear that Tracki is writing this to instruct people on how to hide Tracki devices in a third-party's car, for the purpose of tracking that person's whereabouts without their knowledge.  For example, the

---

[13] https://tracki.com/blogs/post/track-people-with-airtag-best-alternative?srsltid=AfmBOopByMK1QtgJHFnfpVxhbsnojX9pYxHaSsyX56bQFV7QcLpB3Ldd

[14] *Id*. (emphasis added).

[15] https://tracki.com/blogs/post/how-to-hide-a-gps-tracker-on-a-car

post explains that the locations it is recommending are taken from "spying activities experts,"[16] and makes the following statements, among others, about the best places to hide a Tracki device without the driver locating it:

- "If you know how to open the dashboard, under it is the recommended place to conceal your GPS transmitter. The driver can't easily find it, and the device can still pick up satellite signals from there."

- "Another ideal place to hide your vehicle device is the plastic bumper because although it is removable, the driver doesn't usually check the bumper's inside."

- "If you have the skill or if you know a mechanic that could take off, insert, and replace the light cover, place the GPS tracker inside. The disadvantage is that in case of brake failure, there's a good chance your tracking device will be discovered."

- "When you hide a GPS tracker in a car, position the device in a way that the cover cushion will not block the signal, then sew it in. It's a bit challenging, but any person will have a hard time discovering it."

- "Clip it on the sun visors above the front dash on the passenger's side. Although this is a good spot for excellent satellite transmission, this place is also risky if the passenger checks themselves in the mirror."

- "[W]hen you hide GPS tracker on a car, make sure you don't place it near where the driver usually puts their own GPS-equipped device like their cellular phone. The GPS signals of two devices could clash and corrupt the data, or worse, the driver may discover your tracker."

- "In between seats is yet another unadvisable place to hide your tracking device because it's the first place people check to look for their missing items. There is also a possibility that the hidden car tracker will be found when the car is at the car wash for cleaning."

29.     Both posts were authored by Andrew McMennamy, Tracki's Product Owner.  On his LinkedIn page, Mr. McMennamy describes his role at the company as follows: "As a Product

---

[16] *Id.* ("According to spying activities experts, the following places will make a good hiding place for covert tracking.")

Owner at Tracki GPS, my role is to oversee the development and management of our compact GPS tracking device. I am responsible for driving the product strategy, defining the product roadmap, and ensuring that our device meets the needs of our customers."[17]

30.    Thus, Tracki's own words make it indisputable that Defendants sell the Tracki tracking devices in order to aid stalkers in surreptitiously hunting other human beings, without their knowledge or consent.

31.    Tracki's devices are intentionally designed to be "1/3 or less of the size of and [*sic*] any other competing GPS tracker"[18] so that they can "discreetly be placed with [a] low possibility of detection."[19]

32.    The tracking devices are small enough to be easily concealed in a purse, backpack, coat, or car, and can transmit location data for months without needing to be recharged. Tracki's devices can also be remotely activated or deactivated by the owner, making them difficult to detect or disable.

33.    Further, Tracki's devices are designed to use GPS to transmit their location back to their owner.  This means that they are particularly hard to detect by a stalking victim.

34.    Most other publicly available tracking devices—like Apple's AirTag, Tile trackers, or Samsung SmartTags—use Bluetooth signals to transmit their location back to their owners.  In turn, smartphone operating systems have incorporated software that alerts the phone's owner if a Bluetooth-enabled tracker is in their presence:

---

[17] https://www.linkedin.com/in/andrew-mcmennamy-b7326b14/
[18] https://tracki.com/products/tracki-gps-tracker
[19] *Id.*



Fig. 5 (Bluetooth Tracker Alert on an Android Phone)[20]



Fig. 6 (Bluetooth Tracker Alert on an Apple iPhone)[21]

---

[20] https://blog.google/products/android/unknown-tracker-alert-google-android/
[21] https://evolvdgrp.com/how-to-find-out-if-an-airtag-is-tracking-you/

35.    However, as noted above, Tracki's devices do not employ Bluetooth, and therefore neither Android phones nor iPhones are able to detect them and alert their owners of the unwanted, unconsented-to tracking.[22]

36.    Tracki, itself, concedes this fact.  In a blog post on Tracki's website, titled "How to find a GPS tracker on your car," Tracki notes that one must manually search for the device or else purchase bespoke equipment (a "bug sweeper") to search for and potentially locate the tracker.[23]



---

[22] https://omni.tracki.com/hc/help/articles/1742943852-will-a-tracki-device-trigger-an-unknown-tracker-alert
[23] https://tracki.com/blogs/post/how-to-find-a-gps-tracker-on-your-car?srsltid=AfmBOopH3jigElGaYDymSMz2PdTD_Wz_txGubCQqCPphCL-ndk4bLeM0

Fig. 7[24]

If you still can't find the tracker, use specialised tools to detect hidden devices:



Fig. 8[25]

37.    Moreover, even if a person gains physical possession of Defendants' Tracki device,

it still is unlikely that they ever could trace the device back to its owner.  Per Defendants' website:

I found a Tracki tracker and I would like to know who is using it?    —

Under the battery, there is a sticker containing the device ID. If this sticker was
removed and is missing there's no way we can track back the device to whoever
was using it or purchased it.

---

[24] *Id*.
[25] *Id*.

Figure 9[26]

38.     The above makes clear that Tracki created, marketed, and sold a device that is meant to track human beings without their knowledge or consent, and has gone so far as to advertise this fact to its potential customer base of stalkers and abusers, even offering tips on how to do so.

## PLAINTIFF SPECIFIC FACTS

### Plaintiff Jane Doe

39.     Plaintiff began dating her stalker in 2023—the two had been friends since the eighth grade and dated for a short time in their late teens and early twenties—and continued to date him for approximately a year and a half until Plaintiff ended the relationship in July of 2024.

40.     An altercation occurred on July 6, 2024, but Plaintiff chose not to file charges with the police.

41.     On July 30, 2024, Plaintiff was pushed and attacked by her stalker, prompting her daughter to call the police after hearing Plaintiff scream.

42.     At this point, Plaintiff requested that her stalker refrain from entering her home again.

43.     At approximately 6 a.m. on July 31, Plaintiff woke up to discover her stalker standing over her bed. That same day, Plaintiff had the locks on her home changed.

44.     On August 4, Plaintiff received numerous calls on her work and personal phone from her stalker, as well as multiple calls from blocked numbers. Plaintiff's stalker also contacted her daughter.

---

[26] https://tracki.com/pages/faqs

45.    The next day, August 5, Plaintiff attended a regularly scheduled school board meeting and was informed that her stalker was also present.

46.    Plaintiff later learned that her stalker had placed a Tracki device on her bumper during this board meeting. Security footage from the school shows her stalker placing the device on her vehicle.

47.    On August 7, 2024, Plaintiff heard a noise from across the street from her house and discovered her stalker sitting outside in his car. She quickly called the police, who found the car empty, with a gun and his wallet inside. The police brought canines to search for the stalker but were unable to locate him.

48.    On August 10, 2024, Plaintiff went on a first date with a new potential romantic partner. When the two arrived back from their date, Plaintiff received a text from her stalker the moment that her date opened her car door.

49.    Plaintiff quickly discovered that her stalker was immediately behind her and her date. They closed the door and called the police, and her stalker was arrested for stalking and evading arrest.

50.    The police searched Plaintiff's car for a tracking device but did not find one:



Fig. 10

51.    The next day, August 11, 2024, Plaintiff parked at her church and her date from the former evening took her to obtain an *ex parte* order of protection. When they returned to her car, Plaintiff's date inspected the vehicle and located a Tracki device on the rear passenger bumper:



Fig. 11

52.    Plaintiff then contacted the police, and the same officers from the previous night arrived. Plaintiff's stalker was arrested and charged with aggravated stalking and evading arrest.

53.     Plaintiff's stalker ultimately pled guilty, but data regarding his stalking involving Tracki's devices continues to be obtained.  Plaintiff remains in fear of her stalker, both for her sake and for the sake of her children.

## CLASS ALLEGATIONS

54.     Plaintiff brings this class action pursuant to Rule 23(b)(3), 23(b)(2), and 23(c)(4) of the Federal Rules of Civil Procedure, individually and on behalf of all members of the following classes and subclasses, which are jointly referred to throughout this Complaint as the "Class":

> **The Stalked Class:** all persons residing in the United States who were tracked, without consent, by a Tracki GPS tracker.

> **The At-Risk-Of-Stalking Class:** all persons residing in the United States who risk being tracked, without consent, by a Tracki GPS tracker.

> **The Tennessee Stalked Subclass:** all persons residing in Tennessee who were tracked, without consent, by a Tracki GPS tracker.

> **The Tennessee At-Risk-Of-Stalking Subclass:** all persons residing in Tennessee who risk being tracked, without consent, by a Tracki GPS tracker.

55.     Excluded from the Class are the following individuals: officers and directors of Defendants and their parents, subsidiaries, affiliates, and any entity in which either Defendant has a controlling interest; and all judges assigned to hear any aspect of this litigation, their support staff, as well as their immediate family members.

56.     Plaintiff reserves the right to modify or amend the definition of each of the proposed Classes before the Court determines whether certification is appropriate.

57.     This action readily satisfies the requirements set forth under Federal Rule of Civil Procedure 23:

a. Each Class is so numerous that joinder of all members is impracticable. Upon Plaintiff's counsel's investigation, information, and belief, the Class numbers in the thousands if not greater.

b. There are questions of law or fact common to the Classes, which predominate. These questions include, but are not limited to, the following:

    i. Whether Defendants owed Plaintiff and Class Members a duty;

    ii. Whether Defendants breached any duty owed to Plaintiff and Class Members;

    iii. Whether any breach of a duty owed to Plaintiff and Class Members resulted in their injury;

    iv. Whether Defendants may be held strictly liable for harms suffered by Plaintiff and Class Members;

    v. Whether Defendants were unjustly enriched;

    vi. Whether Defendants aided and abetted Plaintiff's and Class Members' stalkers;

    vii. Whether an injunction should issue; and

    viii. Whether declaratory relief should be granted.

c. Plaintiff's claims are typical of the claims of the Class in that Plaintiff, like all Class Members, was subject to unwanted stalking via the Tracki GPS tracker.

d. Moreover, like all Class Members, Plaintiff suffers a substantial risk of repeated injury in the future. Plaintiff continues to be at risk of unwanted and unlawful tracking via a Tracki GPS tracker. Because the conduct complained of herein is systemic, Plaintiff and all Class Members face substantial risk of the same injury

in the future. Defendants' conduct is common to all Class Members and represents a common pattern of conduct resulting in injury to all Members of the Class. Plaintiff has suffered the harm alleged and has no interests antagonistic to any other Class Member.

e. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests do not conflict with the interests of the Class members. Furthermore, Plaintiff has retained competent counsel experienced in class action litigation, consumer protection litigation, and electronic privacy litigation. Plaintiff's counsel will fairly and adequately protect and represent the interests of the Class. FRCP 23(a)(4) and 23(g) are satisfied.

f. In acting as above-alleged, and in failing and refusing to cease and desist despite public outcry, Defendants have acted on grounds generally applicable to the entire Class, thereby making final injunctive relief and corresponding declaratory relief each appropriate with respect to the Class as a whole. The prosecution of separate actions by individual Class Members would create the risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for Defendants.

g. Injunctive relief is necessary to prevent further unlawful and unfair conduct by Defendants. Money damages, alone, could not afford adequate and complete relief, and injunctive relief is necessary to restrain Defendants from continuing to commit their illegal and unfair violations of privacy.

## CAUSES OF ACTION

### COUNT I
**(Negligence – New York Law)**

**(On Behalf of the Stalked Class and the At-Risk-Of-Stalking Class)**

58.    Plaintiff repeats and realleges all preceding paragraphs contained herein.

59.    Defendants owed Plaintiff and Class Members a duty of care in its design, marketing, and introduction into the market of the Tracki GPS tracker.

60.    Defendants breached that duty in the course of designing, marketing, and introducing into the market of the Tracki GPS tracker.

61.    Defendants' breach caused the injuries of Plaintiff and Class Members.

62.    Plaintiff and Class Members suffered damages as the result of Defendants' breach.

63.    As a result of Defendants' conduct, Plaintiff—individually and behalf of all Class Members—seeks all available damages, including but not limited to actual, nominal, and punitive damages, in an amount to be proven at trial.

## COUNT II
**(Strict Products Liability – Design Defect – New York Law)**
**(On Behalf of the Stalked Class and the At-Risk-Of-Stalking Class)**

64.    Plaintiff repeats and realleges all preceding paragraphs contained herein.

65.    Defendants' Tracki device was defectively designed, causing it to be inherently dangerous given its propensity for misuse and its inability to be detected by victims.

66.    As a result of the defective design of the Tracki devices, Plaintiff and Class Members were harmed.

67.    As a result of Defendants' conduct, Plaintiff—individually and behalf of all Class Members—seeks all available damages, including but not limited to actual, nominal, and punitive damages, in an amount to be proven at trial.

## COUNT III
**(Strict Products Liability – Marketing Defect – New York Law)**
**(On Behalf of the Stalked Class and the At-Risk-Of-Stalking Class)**

68.     Plaintiff repeats and realleges all preceding paragraphs contained herein.

69.     Defendants' Tracki device was defectively marketed, without providing adequate warnings or instructions for safe use of the product.

70.     This marketing defect caused the Tracki devices to be inherently dangerous given their propensity for misuse and inability to be detected by victims.

71.     As a result of the marketing defect of the Tracki devices, Plaintiff and Class Members were harmed.

72.     As a result of Defendants' conduct, Plaintiff—individually and behalf of all Class Members—seeks all available damages, including but not limited to actual, nominal, and punitive damages, in an amount to be proven at trial.

**COUNT IV**
**(Aiding and Abetting – New York Law)**
**(On Behalf of the Stalked Class and the At-Risk-Of-Stalking Class)**

73.     Plaintiff repeats and realleges all preceding paragraphs contained herein.

74.     Third-parties used—and continue to use—the Tracki devices for unlawful and/or tortious conduct.

75.     Defendants know, knew, and/or should have known that this unlawful and/or tortious conduct occurred and continues to occur.

76.     Defendants' conduct gave and continues to give substantial assistance or encouragement to the principal to engage in the unlawful and/or tortious conduct complained of herein.

77.     As a result of Defendants' conduct, Plaintiff—individually and behalf of all Class Members—seeks all available damages, including but not limited to actual, nominal, and punitive damages, in an amount to be proven at trial.

## COUNT V
## (Unjust Enrichment)
## (On Behalf of all Classes)

78.    Plaintiff repeats and realleges all preceding paragraphs contained herein.

79.    Defendants should have not released the Tracki devices into the stream of commerce, because of the dangers detailed herein.

80.    As a result of Defendants' selling the Tracki devices, Defendants received a benefit, which it is unjust for them to retain.

81.    Under the circumstances, it is against equity and good conscience to permit Defendants to retain the ill-gotten benefits that they received from the conduct complained of herein.

82.    As a direct and proximate result of Defendants' actions, Defendants have been unjustly enriched. Plaintiff and Class members have a right to restitution in an amount to be proven at trial.

## COUNT VI
## (Negligence – Tennessee Law)
## (On Behalf of the Tennessee Stalked Subclass and the At-Risk-Of-Stalking Subclass)

83.    Plaintiff repeats and realleges all preceding paragraphs contained herein.

84.    Defendants owed Plaintiff and Class Members a duty of care in its design, marketing, and introduction into the market of the Tracki GPS tracker.

85.    Defendants breached that duty in the course of designing, marketing, and introducing into the market of the Tracki GPS tracker.

86.    Defendants' breach caused the injuries of Plaintiff and Class Members.

87.    Plaintiff and Class Members suffered damages as the result of Defendants' breach.

88.     As a result of Defendants' conduct, Plaintiff—individually and behalf of all Class Members—seeks all available damages, including but not limited to actual, nominal, and punitive damages, in an amount to be proven at trial.

## COUNT VII
### (Strict Products Liability –Tennessee Products Liability Act,
### Tenn. Code Ann. § 29-28-101, *et seq.*)
### (On Behalf of the Tennessee Stalked Subclass and the At-Risk-Of-Stalking Subclass)

89.     Plaintiff repeats and realleges all preceding paragraphs contained herein.

90.     Defendants' Tracki devices are and were in a defective condition and/or unreasonably dangerous at the time they left Defendants' control.

91.     Plaintiff and Class members have been injured as a result of this defective and/or unreasonably dangerous condition.

92.     As a result of Defendants' conduct, Plaintiff—individually and behalf of all Class Members—seeks all available damages, including but not limited to actual, nominal, and punitive damages, in an amount to be proven at trial.

93.     Notwithstanding the foregoing, and consistent with the requirements of Tenn. Code Ann. § 29-28-107, Plaintiff—individually and behalf of all Class Members—seeks no less than $1,000,000 in damages for each individual who has been stalked by Defendants' Tracki devices.

## COUNT VIII
### (Aiding and Abetting – Tennessee Law)
### (On Behalf of the Tennessee Stalked Subclass and the At-Risk-Of-Stalking Subclass)

94.     Plaintiff repeats and realleges all preceding paragraphs contained herein.

95.     Defendants owed Plaintiff and Class Members a duty of care.

96.     Defendants knew that the conduct of third-parties who purchased Tracki devices constituted a breach of duty.  This is evidenced, *inter alia*, by Defendants' own blog posts

instructing the readers on how to plant Tracki devices on unsuspecting victims such as Plaintiff and Class Members, in a manner that evades detection.

97.    Defendants gave the stalkers of Plaintiff and Class Members substantial assistance or encouragement to them in their acts. *See, Carr v. United Parcel Service*, 955 S.W.2d 832, 836 (Tenn. 1997).

98.    Defendants' acts were affirmative, and not merely an instance of failure to act.

99.    As a result of Defendants' conduct, Plaintiff—individually and behalf of all Class Members—seeks all available damages, including but not limited to actual, nominal, and punitive damages, in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

Plaintiff, on behalf of herself and members of the general public, requests the Court to enter judgment against Defendants, and accordingly, request the following:

a.    That judgment be entered against Defendants and in favor of Plaintiff on the causes of action set forth in this Complaint;

b.    That judgment be entered against Defendants for all injunctive, declaratory, and other equitable relief sought, including but not limited to an order enjoining Tracki from further unlawful or unfair practices with respect to the design, manufacture, and release into the market of its Tracki GPS trackers;

c.    That Plaintiff and Class Members be awarded actual, nominal, and/or punitive damages, in an amount to be determined at trial;

d.    Reasonable attorneys' fees and litigation costs; and

e.    All other such other relief as the Court may deem appropriate.

Dated: August 8, 2025                    ___/s/ Edwin J. Kilpela Jr._____

Edwin J. Kilpela, Jr.
ek@waykayslay.com
Paige Noah (*pro hac vice* application forthcoming)
pnoah@waykayslay.com
WADE KILPELA SLADE LLP
6425 Living Pl. Suite 200
Pittsburgh, PA 15206
Telephone: (412) 314-0515

David Slade (*pro hac vice* application forthcoming)
slade@waykayslay.com
WADE KILPELA SLADE LLP
1 Riverfront Place
Suite 745
N. Little Rock, AR 72114

*Attorneys for Plaintiff and*
*the proposed class*